IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2014

**GARY ALLEN JORDAN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**Nos. C13-12, C12-309    Donald H. Allen, Judge**

_____

**No. W2013-01600-CCA-R3-PC  - Filed May 1, 2014**

_____

The petitioner, Gary Allen Jordan, appeals the denial of his petitions for post-conviction relief from his guilty plea convictions for possession of marijuana with intent to sell, possession of a firearm during the commission of a dangerous felony, felony evading arrest, and two counts of aggravated assault.  He argues that he received ineffective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered.  After review, we affirm the denial of the petitions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Gary Allen Jordan.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On May 24, 2012, the petitioner pled guilty in case number 11-380 to possession of marijuana with intent to sell and possession of a firearm during the commission of a dangerous felony.  Pursuant to the plea agreement, the trial court imposed a two-year sentence at 30% as a Range I offender on the drug conviction, to be served consecutively to a three-year sentence at 100% as a violent offender on the firearm conviction, for an effective term of five years.

On July 23, 2012, the petitioner pled guilty in case number 12-164 to felony evading arrest and two counts of aggravated assault. Pursuant to the plea agreement, the trial court imposed a two-year sentence at 30% as a Range I offender on the evading arrest conviction and six-year sentences at 30% as a Range I offender on each of the aggravated assault convictions. The sentences in case number 12-164 were to be served concurrently with each other for an effective term of six years, but consecutively to the sentences imposed in case number 11-380 and two other cases – case numbers 11-509 and 12-402. During the plea submission hearing on July 23, 2012, the petitioner also pled guilty to offenses in case numbers 11-509 and 12-402, but he is not challenging these convictions.

At the plea submission hearing on May 24, 2012, concerning case number 11-380, the State recited the factual basis for the plea as follows:

> [I]n Counts 1 and 2 the State would show that on July the 8th of 2010 that [the petitioner] here in Madison County did unlawfully and knowingly possess with intent to sell or deliver an amount of marijuana greater than one-half ounce, a Schedule VI controlled substance. In Count 3 on that same day, July 8th of 2010, here in Madison County, did unlawfully possess a deadly weapon being a gun with the intent to go armed during the commission or attempt to commit a dangerous felony with that dangerous felony being Possession of Marijuana with Intent to Sell and/or Deliver.
>
> Specifically, officers with the Jackson Police Department and investigators with Metro Narcotics Unit received a call from a citizen stating that there was a suspicious Dodge Intrepid in the area of the Royal Arms Apartments. What caught the people's [sic] attention was that there was a person later determined to be Tamarcus Whiteside loading a long gun which turned out to be in this case an assault rifle in the back of the trunk of that Dodge Intrepid. That Dodge Intrepid was later pulled over and determined to be owned and driven by the [petitioner]. . . . The occupants of that vehicle including the driver, [the petitioner], another passenger, Jameon Tipler, and the rear seat passenger, Tamarcus Whiteside, they were asked to exit the vehicle. When they did, officers noticed that there was a 22 caliber pistol under the driver's seat of that vehicle. Also during a search of that vehicle there was found in the console an amount of marijuana that was sent to the lab. The total weight of the marijuana was 39.4 grams. Officers also noted that it was packaged in 25 individual bags indicating possession with intent to sell or deliver.
>
> The Court may also recall that this case was set for trial back on

December the 13th of 2011 at which time [the petitioner] was not present in the courtroom. However, Mr. Tipler and Mr. Whiteside were and they each gave statements against [the petitioner].

Mr. Tipler indicated that he possessed this marijuana, but was asked specifically if it was his alone and he said, "It was me and Jordan's, indicating [the petitioner], the driver of the vehicle, was also in possession of this marijuana and they did intend to sell it or deliver it based on that weight and also the packaging.

Also the Court may recall that Mr. Whiteside had pled guilty to possession of that assault rifle, but was asked specifically about this pistol and he said it was not his that it was [the petitioner]'s pistol.

So, the State would show that the [petitioner] . . . did knowingly and unlawfully possess this marijuana with intent to sell along with Jameon Tipler and he possessed this 22 caliber pistol with intent to go armed during that dangerous felony.

All of this happened here in Madison County.

At the plea submission hearing on July 23, 2012, concerning case number 12-164, the State recited the factual basis for the pleas as follows:

[I]n Count 1[,] . . . the [petitioner] on October 26th of 2011 did evade law enforcement in a motor vehicle. This is felony evading. He did evade law enforcement personnel after receiving a signal to bring his motor vehicle to a stop.

In Count 2 on that same day, October the 26th, he did intentionally or knowingly by the use of a deadly weapon being a motor vehicle caused Thomas Brea to fear imminent bodily injury and also on that same day, October 26th of 2011, did intentionally or knowingly by the use of a deadly weapon, a motor vehicle, did cause Daniel Washburn to fear imminent bodily injury. Specifically on October the 26th of 2011, this was after the [petitioner] failed to appear in his trial in 11-380 and so officers were advised to be on the lookout for [the petitioner]. They went to Lane College area. There Officer Brea and Officer Washburn, who are both officers with the Jackson Police Department, made contact with a vehicle fitting the description of a suspicious vehicle. That vehicle then fled from them. Officers gave chase. The chase

-3-

started at Lane and Middleton and ended at 1094 Flex Drive, the parking lot exit. Officer Brea then got out of his vehicle and took out his weapon and ordered that vehicle to stop. The vehicle driven by the [petitioner] . . . did drive in Officer Brea's direction causing him to move out of the way. He was not injured, but he did fear imminent bodily injury due to the use of that motor vehicle by the [petitioner]. Officer Brea and Officer Washburn were also in that area. They fired several rounds at the [petitioner]. Officers then gave chase and they were then able to find the car at the entrance to Kate Campbell Park. They did find two females in the vehicle, but the driver, [the petitioner], had fled prior to officers arriving. He was later based on a photo lineup identified as the person driving the vehicle, but was apprehended later. This all occurred here in Madison County.

The petitioner filed a timely *pro se* petition for post-conviction relief on December 10, 2012, concerning the judgment in case number 11-380. He filed a timely *pro se* petition for post-conviction relief on January 14, 2013, concerning the judgment in case number 12-164. Through appointed counsel, the petitioner filed an amended petition for post-conviction relief, captioning both criminal case numbers, on April 1, 2013. In his petitions, the petitioner alleged, among other things, that trial counsel was ineffective in failing to seek suppression of evidence that was secured in violation of his constitutional protections against illegal search and seizure; that trial counsel was ineffective in failing to call Jasmine Copeland to testify at trial as a witness; that he was suffering from depression and under the influence of prescribed medication at the time of his guilty plea rendering his plea involuntary; and the effects of his medication were compounded by the pressure and coercion of counsel to accept the plea.

At the evidentiary hearing, the petitioner testified that counsel was appointed to represent him in both cases after the attorney he had hired in case number 11-380 withdrew from the case. The petitioner acknowledged that he told the court at the plea hearings that he was satisfied with counsel and thought that pleading guilty was in his best interest. However, he was taking medication for depression at the time and only realized after he stopped taking it that his thought process was not clear when medicated. He said that counsel was determined "to plead out" and, with his "mind in . . . a fog," he went along with what counsel told him was in his best interest. The petitioner claimed that he did not realize he was on medication at the time he pled guilty and did not hear the question when the judge asked him if he was taking any medications. On redirect, the petitioner clarified that he knew he was physically taking a pill but did not understand the effects it had on him.

The petitioner testified that he asked his retained attorney to file a motion to suppress evidence based on an unlawful search and seizure, which he filed, although the petitioner did

-4-

not think it "look[ed] like a motion to [him]." The motion was denied by the trial court following a hearing. After counsel was appointed, the petitioner asked her to file a second motion to suppress, but she did not do so.

The petitioner testified that he had counsel interview his ex-girlfriend, Jasmine Copeland, to obtain "the truth about what happened" concerning the aggravated assault. The petitioner said that Copeland originally gave a statement to the police, implicating him in the crime, but Copeland told counsel that the petitioner was not the driver of the car. The petitioner wanted to use the new information from Copeland at trial, but counsel told him that she "would represent [him] like a public defender" if he did not plead guilty.

On cross-examination, the petitioner acknowledged that he had two misdemeanor cases with the same attorney going on at the same time as the two cases at issue in his petition but that he did not have any problems with the misdemeanor cases. The petitioner stated that, in addition to the medicine for depression, he was taking pain medication for back pain at the time of his pleas. The petitioner said that his anti-depressant medication was working because he was not depressed but that it caused him to be in "a fog." The petitioner stated that he thought counsel was a good lawyer unless "you don't do what she wants you to do, then she's not going to be a good lawyer." The petitioner said that he thought he would have fared better at a trial than he did by pleading guilty.

Patricia Jordan, the petitioner's stepmother, testified that she was privy to some conversations between the petitioner and counsel, and counsel believed that taking a plea bargain was in the petitioner's best interest because "he could receive a considerable amount of time" if he went to trial. Jordan said that the petitioner was stressed about the amount of time he possibly faced and had recently been put on medication for depression. She stated that, when she talked to the petitioner during the pendency of the case, he sometimes comprehended mentally what was going on but other times did not. She conveyed to counsel that the petitioner seemed unsure of himself and what he needed to do.

On cross-examination, Jordan admitted that it did not appear that counsel was forcing the petitioner to plead guilty. Instead, Jordan stated that counsel "was strongly suggesting to him that it would be in his best interest to take this plea," and the petitioner was scared of getting more time and confused about what the evidence would be at a trial. However, Jordan acknowledged that she never expressed to counsel that she felt like the petitioner was confused about things. She also acknowledged that she did not think counsel was trying to trick or mislead the petitioner.

The petitioner's trial counsel testified that she received an appointment to represent the petitioner in general sessions court, in the case that became case number 11-380 in circuit

court. The petitioner had originally retained an attorney in that case, who filed a motion to suppress which was denied by the trial court after a hearing. However, retained counsel came to no longer be on the petitioner's case and counsel received the appointment, in addition to subsequent appointments in case number 12-164 as well as two other cases.

Counsel testified that she met with the petitioner several times and discussed with him the actions that had been taken by the petitioner's original retained counsel. The petitioner wanted counsel to file another motion to suppress. Counsel advised the petitioner that she needed the transcripts from the preliminary hearing conducted by retained counsel if she was going to proceed on a second motion to suppress, but the trial court did not hear her motion to transcribe the transcripts because plea negotiations were pending and the court ultimately denied her motion. Counsel testified that, regardless, she did not think it was likely for the petitioner to prevail on a second motion to suppress. On cross-examination, counsel testified that she felt there was a genuine issue regarding the stop and search in case number 11-380, but stated that "the hearing had been held . . . and [the court] did not agree with [her] interpretation of the events[.]" Counsel maintained that she went over the petitioner's options with him regarding the suppression issue but told him that she doubted the court would change its opinion. She also informed the petitioner that he could not plead guilty if he wanted to appeal the trial court's denial of the suppression motion.

Counsel testified that she told the petitioner he could receive a possible sentence of twenty to thirty-five years if convicted in all four cases. She explained that the petitioner was likely a Range II offender because of his criminal history and he faced consecutive sentences due to his commission of offenses while out on bond and while he had a capias for his arrest due to his failure to appear for trial in case number 11-380.

Counsel testified that she met with the petitioner fifteen to twenty-five times in the jail to answer his questions and discuss his cases. She said that the petitioner had some difficulty understanding the legal system, as was normal for most defendants. She informed the petitioner that his co-defendant could testify against him at trial. She said that she and the petitioner discussed having trials in all four cases, and she explained to him that "a package deal" on all four cases might be in his best interest.

Counsel testified that the petitioner was interested in pursuing plea negotiations and was willing to enter a plea "under the right conditions." Regarding the petitioner's claim that he was under the influence of medication at the time of his pleas, counsel recalled that, when she first spoke to the petitioner, he was very anxious, upset, and depressed at the thought of being re-incarcerated. He told her that he was also experiencing back pain. The medical staff prescribed Celexa for his depression and a non-narcotic medication for his back pain. Having seen the petitioner before and after he began taking medication, counsel did not see

any change in his behavior, other than he seemed calmer. The petitioner did not seem to have any difficulty understanding, or have any more or less questions when on his medication. Counsel recalled that the court asked the petitioner at the plea submission hearings if he was under the influence of any medication that would affect his ability to plead and the petitioner said "no," which counsel believed to be a true statement.

Counsel testified that the petitioner indicated a willingness to go forward with the plea because he did not want to run the risk of a twenty- to thirty-year sentence. The petitioner never expressed that counsel was pressuring him or coercing him in any way. Counsel thought there was a high risk of conviction in the petitioner's cases and thought that taking a plea was in his best interest. The petitioner's main concern was the number of years he could have to serve.

Counsel stated that there were problems for the defense if the cases went to trial. For instance, pertinent to the aggravated assault case, the petitioner's girlfriend at the time, Jasmine Copeland, gave a statement to police the night of the incident in which she said that the petitioner was the one driving the car. Counsel had an hour-long meeting with Copeland in which Copeland tried to convey that the petitioner was not driving the car. However, Copeland could not answer basic questions about who was driving if not the petitioner, and neither counsel nor her paralegal believed Copeland. Counsel expressed to the petitioner that Copeland would not be a good witness for the defense at a trial.

Counsel testified that she felt that she and the petitioner had a good working relationship and that she was able to communicate with him and he was able to understand her. She believed that the petitioner got a good deal.

In denying the petitions, the post-conviction court found that the petitioner had not met his burden of establishing his allegations by clear and convincing evidence. The court determined that the petitioner's pleas were knowingly and intelligently entered and that the petitioner averred at the plea hearings that he was not under the influence of any medication that might impair his judgment. The court did not accredit the petitioner's testimony at the evidentiary hearing that he did not understand or that his thought process was "cloudy" or "foggy" at the time her entered his pleas. The court also found that the petitioner's claim that he received ineffective assistance of counsel was not supported by the evidence.

## ANALYSIS

The petitioner argues that "his mental health issues and state of mind at the time, coupled with the undue pressure placed on [him] by his attorney, makes the plea[s] void as [they were] not knowingly and voluntarily entered." He additionally asserts that "due to

trial's counsel [sic] deficient performance, he has been denied effective assistance of counsel and has been prejudiced because of it[.]"

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability

sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

After review, we conclude that the record supports the post-conviction court's determinations that the petitioner's pleas were knowingly and voluntarily entered and that he received the effective assistance of counsel. The transcripts from the plea hearings reveal that the petitioner averred that he was not under the influence of any drugs or medication that might impair his judgment. However, at the evidentiary hearing, the petitioner claimed that he did not realize he was on medication at the time he pled guilty. On redirect, the petitioner clarified that he knew he was physically taking a pill but did not understand the effects it had on him. Counsel testified that, having seen the petitioner before and after he began taking medication, she did not see any change in his behavior, other than he seemed calmer. Counsel testified that the petitioner did not seem to have any difficulty understanding, or have any more or less questions when on his medication. In addition, the petitioner averred at the plea hearings that no force or pressure had been applied to him or threats or promises

made to cause him to plead guilty. Yet, he testified at the post-conviction hearing that counsel coerced and pressured him to accept the guilty plea and threatened to represent him "like a public defender" if he went to trial. The petitioner presented no evidence in support of his contentions, aside from his own testimony, which the post-conviction court specifically found to not be credible. Moreover, the petitioner never told the trial court during the course of either plea hearing that he did not want to plead guilty. Interestingly, as observed by the post-conviction court, the petitioner admitted at the evidentiary hearing that he "didn't have a problem" with his pleas to misdemeanor charges in two other cases entered during the same plea submission hearing when he pled guilty to the felony charges in case number 12-164. Thus, it appears as though the petitioner's "cloudy" or "foggy" mental state that day only affected his felony guilty pleas, not his misdemeanor guilty pleas.

The record likewise supports the post-conviction court's determination that the petitioner received effective assistance of counsel. The petitioner testified at both plea submission hearings that he was satisfied with counsel's representation and that counsel had advised him of all possible legal defenses. The trial court gave the petitioner numerous chances at the plea hearings to ask questions or complain about counsel, even specifically asking if counsel had done or said anything that he needed to address, but the petitioner never had anything to address or raised any complaints. In fact, at the end of the petitioner's second plea submission hearing, the petitioner testified that counsel was a "great lawyer."

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petitions.

_____
ALAN E. GLENN, JUDGE

-10-